NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| TEO JOHNSON, TEO T. POWELL, ZENA L. POWELL a.k.a. THE JOHNSON-POWELL GROUP, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF CLIFTON, CLIFTON POLICE DEPARTMENT, and THE CITY OF CLIFTON ABC LICENSING BOARD,<br><br>Defendants. | Civil Action No.: 20-20118 (CCC)<br><br><br><br>**OPINION** |

**CECCHI, District Judge.**

This matter comes before the Court by way of Plaintiffs Teo Johnson, Zena L. Powell, and Teo T. Powell's (together, "Plaintiffs") and Defendants City of Clifton, Clifton Police Department, and City of Clifton Board of Alcoholic Beverage Control's ("Clifton ABC" and together, "Defendants") cross-motions for summary judgment. ECF Nos. 66, 69-76. Defendants filed an opposition to Plaintiffs' motion. ECF No. 78. The Court decides this matter without oral argument pursuant to Fed. R. Civ. P. 78(b). For the reasons set forth below, Plaintiffs' motion for summary judgment is **DENIED** and Defendants' motion for summary judgment is **GRANTED**.

**I.     BACKGROUND**[1]

This action concerns the denial of a person-to-person liquor license transfer application submitted by the Johnson Powell Group, LLC in the City of Clifton, Passaic County, New Jersey. ECF No. 1-2 at 1; Def. SMF ¶ 6. The Johnson Powell Group is an entity comprised of two

---

[1] Background facts are taken from the parties' statements of material fact, pursuant to Local Civil Rule 56.1, see ECF Nos. 66-1 ("Def. SMF"), 69 ("Pl. SMF"), 78-1, and the evidence submitted by the parties.

individuals, Plaintiffs Teo Johnson and Teo T. Powell. Def. SMF ¶ 6; ECF No. 66-3, Ex. C at 25. The transfer application also listed Plaintiff Zena L. Powell as an operator of the business. *Id.* at 18. Plaintiffs sought transfer of an existing liquor license, license number 1602-44-004-004, from S&S Liquors, LLC to the Johnson Powell Group. *Id.* at 22; ECF No. 1-2 at 1.

Clifton ABC is the entity established "to regulate the sale and licensing of alcoholic beverage licenses within the City of Clifton." Def. SMF ¶ 7 (citing N.J.S.A. 33:1-5). On or about October 9, 2020, Plaintiffs filed, via their counsel Robert F. Green, Esq., a transfer application with Clifton ABC's board secretary, Michele Butler.[2] Def. SMF ¶ 9; ECF No. 1-7 at 30. Several days later, on October 13, 2020, Ms. Butler notified Mr. Green that Plaintiffs' application contained a number of deficiencies that required fixing. ECF No. 1-3 at 19-20. On October 20, 2020, Ms. Butler alerted Mr. Green to several additional issues on the application that needed resolution. Def. SMF ¶ 11; ECF No. 1-3 at 15-18. And on October 26, 2020, Ms. Butler received a "seller's consent to transfer" form, which completed Plaintiff's transfer application. Def. SMF ¶ 12; ECF No. 66-3, Ex. D at ¶ 7.

On or around the next day, Ms. Butler sent Plaintiffs' application to then-Detective Glen Arthur of the Clifton Police Department, ECF No. 66-3, Ex. D at ¶ 7, a current Sergeant and former liaison officer to Clifton ABC, ECF No. 66-3, Ex. E at ¶ 1. Sergeant Arthur was tasked with completing a background investigation of the applicant pursuant to N.J.S.A. 33:1-25. Def. SMF ¶ 13; ECF No. 66-3, Ex. D at ¶ 2. Among other things, Sergeant Arthur's investigation involved reviewing Plaintiffs' application, "reviewing criminal history record information search results of the applicant's members obtained from the State Bureau of Identification . . . and the Federal Bureau of Investigation [("FBI")]," and interviewing the applicant's members. Def. SMF ¶ 14.

---

[2] Plaintiffs' briefing suggests that iterations of the transfer application were submitted as early as September 2020. ECF No. 69 at 21

Applicants are also required to order fingerprint searches through a third party and provide the results of those searches to the Clifton Police Department. *Id.* at ¶ 15.

On or about December 4, 2020, Sergeant Arthur learned from documentation provided by the FBI that Plaintiff Teo Johnson had previously been convicted of, and served a ten-year prison sentence for, a drug-related charge under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Def. SMF ¶ 22. This conflicted with Plaintiffs' transfer application, which indicated that no member of the Johnson Powell Group had ever been convicted of a criminal offense. Pl. SMF ¶ 9; ECF No. 66-3, Ex. C at 20. After making this discovery, Sergeant Arthur contacted Deputy Attorney General Richard Karczewski, who informed him that (1) Plaintiff Teo Johnson's RICO conviction "would be considered a crime involving moral turpitude," and (2) Plaintiffs' inconsistent application response would constitute a disqualifying misrepresentation. Def. SMF ¶¶ 23-25. Sergeant Arthur also confirmed that Plaintiffs had not applied for a disqualification removal order, which could qualify the Johnson Powell Group for a liquor license notwithstanding the criminal conviction. *Id.* at ¶ 26.

On December 4, 2020, Sergeant Arthur also interviewed Plaintiffs Teo T. Powell and Teo Johnson as part of his investigation. Pl. SMF ¶ 9. During this interview, Sergeant Arthur informed them that he was aware of Plaintiff Johnson's 1995 RICO conviction and subsequent period of incarceration, which Plaintiff Johnson confirmed. Def. SMF ¶ 29. At that time, Sergeant Arthur informed Plaintiffs Powell and Johnson that the RICO conviction and misrepresentation on their application were grounds for disqualification and that "his recommendation, via the Police Department's chain of command would be to deny" Plaintiffs' application. Def. SMF ¶ 30. The next day, Sergeant Arthur asserts that he informed Plaintiffs' counsel, Mr. Green, of his findings and recommendation to deny Plaintiffs' application. *Id.* at 32.

Defendants assert that Plaintiffs and Mr. Green were notified that their transfer application was placed on the agenda for the ABC Board's December 9, 2020, monthly meeting and that they were entitled to appear and be heard. *Id.* at ¶ 34; *see also* Pl. SMF ¶ 8. Neither Plaintiffs nor their counsel appeared before the ABC Board on December 9th and the Board denied the Johnson Powell Group's transfer application. Def. SMF ¶¶ 33-34. On December 16, 2020, Ms. Butler provided Mr. Green with written notice that the Johnson Powell Group's application had been denied "on the basis of the disqualifying discrepancies found during the course of the Clifton Police Department's investigation." *Id.* at ¶ 35; *see also* ECF No. 72-3.

Plaintiffs initiated the instant action on December 21, 2020. ECF No. 1. The complaint, brought under 42 U.S.C. § 1983, alleges violations of the Fourth, Fifth, Ninth and Fourteenth Amendments. *Id.* at 3. In addition to the § 1983 claim, the complaint alleges statutory violations of (i) 18 U.S.C. § 242 for deprivation of rights; (ii) 42 U.S.C. § 1985 for conspiracy to interfere; (iii) 42 U.S.C. § 1986 for neglect to prevent; and (iv) Title VII of the Civil Rights Act of 1964. ECF No. 1 at 3. Interpreting their complaint liberally, Plaintiffs' claims are predicated on three grounds: (1) Defendants denied Plaintiffs' transfer application on bases that violated their constitutional rights, *id.* at 3-4 (Section II(B) & (D)); (2) Defendants conspired to delay Plaintiffs' application process resulting in Plaintiffs suffering economic harm, *id.* at 4 (Section II(D); Section III(A) & (B)); and (3) Defendants denied Plaintiffs' application after unlawfully obtaining a sealed record of Plaintiff Teo Johnson's 1995 RICO conviction, *id.* at 4 (Section II(D); Section III(C)). Fact discovery closed in this case on March 31, 2022. *See* ECF No. 47. Defendants moved for summary judgment on September 30, 2022, ECF No. 66, and Plaintiffs moved for summary judgment on October 17, 2022, ECF No. 69.

## II.     LEGAL STANDARD

### a. Summary Judgment Under Fed. R. Civ. P. 56

Summary judgment is appropriate if the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers or other materials" demonstrate that there is no genuine issue as to any material fact, and, construing all facts and inferences in a light most favorable to the non-moving party, "the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) *see also Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986); Fed. R. Civ. P. 56(a).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has satisfied this burden, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Grp. Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). In order to meet its burden, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citation omitted); *see also Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322. Importantly, summary judgment is also appropriate "if the non-moving party provides merely conclusory or speculative evidence." *Beard v. Norfolk S. Ry. Corp.*, No. 18-CV-1801, 2020 WL 2616670, at *2 (M.D. Pa. Mar. 12, 2020). Indeed, "[o]ne cannot create an issue of fact merely by . . . denying

averments . . . without producing any supporting evidence of the denials." *Thimons v. PNC Bank, NA*, 254 F. App'x 896, 899 (3d Cir. 2007); *see also Beard*, 2020 WL 2616670, at *3 ("[O]nly evidence which is admissible at trial may be considered in ruling on a motion for summary judgment.").

"The standard by which the court decides a summary judgment motion does not change when the parties file cross-motions." *Clevenger v. First Option Health Plan of N.J.*, 208 F. Supp. 2d 463, 468 (D.N.J. 2002). "When ruling on cross-motions for summary judgment, the court must consider the motions independently . . . and view the evidence on each motion in the light most favorable to the party opposing the motion." *Id.* at 468-69 (citations omitted).

### b. Standard for *Pro Se* Parties

The Court has a "well-established" obligation to "liberally construe a *pro se* litigant's pleadings." *Higgs v. Atty. Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011). This applies to a *pro se* litigant's summary judgment filings. *Senisch v. Tractor Supply Co.*, No. 16-CV-47, 2018 WL 324717, at *8 (D.N.J. Jan. 8, 2018). However, "the same summary judgment standard applies to *pro se* litigants." *Id.* (quoting *Bank of Nova Scotia v. Ross*, No. 2010-118, 2012 WL 4854776, at *3 (D.V.I. Oct. 12, 2012)). "[O]n a motion for summary judgment, a *pro se* plaintiff is not relieved of his obligation under Rule 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment." *Edwards v. Rice-Smith*, 606 F. Supp. 3d 151, 154 (E.D. Pa. 2022) (internal citation omitted).

### III. DISCUSSION

On summary judgment, Defendants argue that Plaintiffs' action fails in its entirety because it has not been shown that Defendants' handling of and ruling on Plaintiffs' transfer application violated any constitutionally or statutorily protected rights. *See generally* ECF No. 66-2.

6

Defendants argue that they are entitled to summary judgment because (1) the Clifton Police Department did not unlawfully access any federally sealed records in conducting a background investigation in connection with the Johnson Powell Group's transfer application, *id.* at 8; (2) Defendants are entitled to immunity because they have not performed pursuant to a policy or governmental custom that would subject them to liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), *id.* at 4; (3) Plaintiffs have failed to produce evidence showing that Defendants did not process their application in a timely manner or how any delay would have violated a protected right, *id.* at 12; and (4) Plaintiffs failed to exhaust administrative remedies, *id.* at 16.

Plaintiffs also move for summary judgment. *See generally* ECF No. 69. Plaintiffs contend they are entitled to summary judgment on all claims, arguing that (1) their inconsistent response on the transfer application with regard to Plaintiff Johnson's RICO conviction is justified as "excusable neglect," *id.* at 21; (2) Defendants have violated 42 U.S.C. §§ 1983, 1985 and 1986, and Title VII of the Civil Rights Act of 1964,[3] *id.* at 26-27; (3) Defendants "have failed to prove that the application was processed in a timely fashion and how the timing of processing did not violate the Plaintiffs rights," *id.* at 37; and (4) Defendants' exhaustion argument fails, *id.* at 38.

---

[3] Plaintiffs' motion raises, for the first time, a claim under 42 U.S.C. § 1981. ECF No. 69 at 14, 27. However, because this claim was not raised in Plaintiffs' complaint, the Court will not recognize it here. *Torain v. City of Philadelphia*, No. 14-CV-1643, 2023 WL 174951, at *7 (E.D. Pa. Jan. 12, 2023) ("It is improper to raise a new claim for the first time at summary judgment.") (collecting cases). In any event, Plaintiffs' § 1981 claim would fail because they have offered no evidence to show "an intent to discriminate on the basis of race by the defendant[s]." *Estate of Olivia ex rel. McHugh v. New Jersey*, 604 F.3d 788, 797 (3d Cir. 2010); *see also Pryor v. Nat'l Collegiate Athletics Ass'n*, 288 F.3d 548, 562 (3d Cir. 2002) ("§ 1981 provide[s] a private cause of action for intentional discrimination only."). Additionally, while Plaintiffs' motion fails to mention their 18 U.S.C. § 242 claim, which is asserted in Plaintiffs' complaint, the Court grants summary judgment in favor of Defendants as § 242 is a criminal statute with no private right of action. *Jackson v. Bolandi*, No. 18-CV-17484, 2020 WL 255974, at *6-7 (D.N.J. Jan. 17, 2020).

### a. Summary Judgment is Granted in Favor of the Clifton Police Department

At the outset, the Court finds that Plaintiffs' claims against Defendant Clifton Police Department fail as a matter of law. The "numerous courts that have considered the question of whether a municipal police department is a proper defendant in a § 1983 action have unanimously reached the conclusion that it is not." *Iudici v. Passaic Cnty. Sheriff's Dep't*, No. 12-CV-3466, 2018 WL 3000332, at *3 n.13 (D.N.J. June 15, 2018) (quoting *PBA Local No. 38 v. Woodbridge Police Dep't*, 832 F. Supp. 808, 825 (D.N.J. 1993)); *see also Lane v. New Jersey*, No. 22-CV-4239, 2022 WL 17829431, at *6 (D.N.J. Dec. 21, 2022) (dismissing all claims against municipal police department defendant). More broadly, a municipal police department "cannot be sued in conjunction with the municipality" because it "is not an entity separate from the municipality." *Castoran v. Pollak*, No. 14-CV-2531, 2017 WL 4805202, at * (D.N.J. Oct. 25, 2017) (quoting *Adams v. City of Camden*, 461 F. Supp. 2d 263, 266 (D.N.J. 2006)) (dismissing municipal police department from the suit). Accordingly, summary judgment is granted in favor of Defendant Clifton Police Department.

### b. Summary Judgment is Granted in Favor of Defendants on Plaintiffs' Claims Under 42 U.S.C. §§ 1983, 1985 and 1986, and Title VII

As an initial matter, Plaintiffs argue that Defendant Clifton Police Department unlawfully obtained records of Plaintiff Johnson's prior RICO conviction, which he believed to be sealed, in violation of his Fourth Amendment rights. However, during discovery, and upon contacting the Southern District of New York where Plaintiff Johnson was convicted, Plaintiffs admit discovering that Plaintiff Johnson's RICO conviction was in fact not sealed for purposes of licensure investigations. ECF No. 69 at 22. As such, summary judgment is granted in favor of Defendants on Plaintiffs' § 1983 claim to the extent that it is predicated on an unlawful search and seizure of Plaintiff Johnson's criminal records in violation of the Fourth Amendment.

Next, a § 1983 claim against a municipality may proceed where "[a] plaintiff [ ] put[s] forth that an unconstitutional policy or custom of the municipality led to his or her injuries." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (citing *Monell*, 436 U.S. at 694). To do so, a plaintiff "must point to an official proclamation, policy or edict by a decisionmaker possessing final authority to establish municipal policy on the relevant subject," or a custom supported by a "course of conduct so well-settled and permanent as to virtually constitute law." *Id.* at 105-06; *see also Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019)).

Here, Plaintiffs have failed to identify what the specific policy or custom is that allegedly caused them harm. The brief filed in support of Plaintiffs' complaint merely states that "the defendants admission of the act to deny the Liquor license transfer under [their] discretion at the municipal level is direct proof of the civil rights violation . . . and is attributable to the enforcement of a municipal policy, practice, or decision of a final municipal policy maker." ECF No. 1-2 at 12-13; *see also McTernan v. City of New York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) (finding plaintiff failed to identify policy or custom where complaint alleged that plaintiff's rights were violated "due to the City's policy of ignoring First Amendment right[s]"). Neither the briefing nor evidence provided on summary judgment brings clarity to the specific policy or custom Plaintiffs allege violated their constitutionally protected rights. ECF No. 69 at 29 (Plaintiffs repeating the same allegation in their summary judgment briefing). Instead, Plaintiffs assert allegations regarding the purported wrongful conduct of Ms. Butler and Sergeant Arthur, ECF No. 69 at 32-33, but do not connect that alleged conduct to any underlying policy or custom authorized by the municipal Defendants, *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) ("A municipality cannot be held liable for the unconstitutional acts of its employees on a theory of *respondeat superior*.").

Plaintiffs' pleadings can otherwise be understood to assert two possible bases upon which their license transfer application was denied: (1) Plaintiff Johnson's RICO conviction constituted "a [disqualifying] crime involving moral turpitude" under N.J.S.A. 33:1-25, ECF No. 69 at 37; and (2) Plaintiffs misrepresented Plaintiff Johnson's criminal history on the transfer application, *id.* at 22. This comports with the available evidence, namely Sergeant Arthur's certification and December 4, 2020 report, *see* ECF No. 66-3, Ex. E at ¶¶ 13-14; *id.* at p. 43, and the ABC Board's December 16, 2020 denial letter, ECF No. 72-3. However, neither basis is sufficient for *Monell* liability. Municipal liability is imposed under § 1983 "when the policy or custom itself violates the Constitution or . . . while not unconstitutional itself, is the 'moving force' behind the constitutional tort of one of its employees." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981)); *see also Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (stating same).

N.J.S.A. 33:1-25 dictates that liquor licenses in New Jersey shall not be issued to "any person who has been convicted of a crime involving moral turpitude."[4] N.J.S.A. 33:1-25. Federal courts have long recognized the legitimacy of "moral turpitude" requirements, including those found in federal law. *See, e.g.*, 8 U.S.C. § 1227(a)(2)(A)(i) (permitting removal of non-citizens who are "convicted of a crime involving moral turpitude"); *Darks v. City of Cincinnati*, 745 F.2d 1040, 1043 (6th Cir. 1984) (finding municipal code calling for licensure revocation of those committing crimes involving moral turpitude "provides an additional rational basis for the city's practice of refusing to issue licenses to convicted felons: the desire to treat offenders the same

---

[4] The Court also notes that Defendants lacked a meaningful choice as to whether they would enforce this state law given that N.J.S.A. 33:1-25 dictates that "[n]o license of any class shall be issued" to anyone who committed a crime involving moral turpitude. *See Juzumas v. Nassau Cnty., New York*, 33 F.4th 681, 688 (2d Cir. 2022) (finding municipal liability cannot be imposed where municipality had no choice but to enforce state law); *Mach Mining LLC v. EEOC*, 575 U.S. 480, 486 (2015) (finding statutory language proceeding "shall" is "mandatory, not precatory").

10

irrespective of the date of their conviction"); *N.J. Coalition of Rooming & Boarding House Owners v. Mayor & Council of City of Asbury Park*, 152 F.3d 217, 228 (3d Cir. 1998) (rejecting state and federal constitutional challenges to ordinance that "prohibit[s] ownership of [rooming and boarding] houses by persons convicted of crimes of moral turpitude"). Moreover, N.J.S.A. 33:1-25 only applies to liquor licenses and "does not operate as a blanket prohibition on [liquor] licenses for *all* felons or all misdemeanants." *Wombles v. City of Mt. Washington, Ky.*, No. 15-CV-00856, 2017 WL 927238, at *6 (W.D. Ky. Mar. 8, 2017) (rejecting constitutional challenge to ordinance denying business licenses to those committing crimes involving moral turpitude and finding that "this is precisely the type of discretion to which courts must defer under rational basis review of Fourteenth Amendment claims").

Additionally, the ABC Board's December 16, 2020, letter to Plaintiffs identifies that the transfer application was denied "due to certain disqualifying discrepancies that were found by the Clifton Police Department during their investigation." ECF No. 72-3. While Plaintiffs contend that their failure to adequately reflect Plaintiff Johnson's criminal history on the application was an exercise in "excusable neglect," ECF No. 69 at 21-26, N.J.S.A. 33:1-25 dictates that "[a]ll statements in the applications required to be made by law or by the rules and regulations shall be deemed material" and "misrepresentation . . . of material facts in the securing of a license are grounds for suspension or revocation of the license." N.J.S.A. 33:1-25. Plaintiffs do not argue that this state law, which Defendants merely adhered to, is facially unconstitutional.

Further, Plaintiffs have not explained how enforcement of a facially constitutional state law was "the 'moving force' behind the constitutional tort of one of its employees." *Colburn*, 946 F.2d at 1027. Plaintiffs contend that a "bias implication is implicit in the denial of the license" because the denial was "solely based on a conviction from over 25 years ago." ECF No. 69 at 28.

11

However, the available evidence suggests that the application denial was based, not only on Plaintiff Johnson's RICO conviction, but also on the fact that the application misrepresented his criminal history. *See* ECF No. 66-3 at ¶ 14. The Court is also unpersuaded by Plaintiffs' suggestion that Ms. Butler improperly handled Plaintiffs' transfer application because of a potential personal connection to the ultimate purchaser of the liquor license. ECF No. 69 at 33. Plaintiffs have not provided any evidence of such a relationship, *see id.* (noting "Plaintiffs would need to further investigate" this allegation), nor would evidence of such a relationship justify imposing liability on municipal defendants, *see City of Oklahoma v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("[A] single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy"). And finally, the Court finds that Defendants did not err in concluding that Plaintiff Johnson's drug-related RICO conviction, for which he served a ten-year prison sentence, constituted a crime involving moral turpitude. *See, e.g.*, *Town of Poughkeepsie v. Espie*, 402 F. Supp. 2d 443, 454 (S.D.N.Y. 2005) (recognizing that "RICO activity," involving moral turpitude, was not insurable); *Lappin v. Mesirow Investment Servs., Inc.*, No. 91-4374, 1992 WL 106776, at *4 (N.D. Ill. May 11, 1992) (recognizing that RICO claims involve alleging the "commission of acts of moral turpitude").

In addition, Plaintiffs' 42 U.S.C. § 1985 claim must fail for the same reasons that their § 1983 claim fails. *Di Maggio v. O'Brien,* 497 F. Supp. 870, 875-76 (E.D. Pa. 1980) ("[T]he Monell analysis that liability under s 1983 cannot be predicated on respondeat superior applies with equal force to s 1985."); *Estate of Lagano v. Bergen Cnty. Prosecutor's Office*, 769 F.3d 850, 854 n.3 (3d Cir. 2014) (finding that "person" is interpreted the same under § 1983 and § 1985). As such, their § 1986 claim must also fail. *D'Aurizio v. Palisades Park*, 963 F. Supp. 378, 386 (D.N.J.

1997) (finding that "claims under [§] 1986 are derivative in nature" and require a valid underlying § 1985 claim); *Ramziddin v. Onfri*, No. 19-CV-17578, 2022 WL 4354837, at *4 (D.N.J. Sept. 20, 2022) (dismissing §§ 1985 and 1986 claims without further analysis after finding defendants enjoyed immunity under § 1983).

Finally, Plaintiffs' claim under Title VII of the Civil Rights Act of 1964 must fail. Courts have recognized that "where a governmental organization is exercising its police power, the control it exerts over a person's access to the job market does not render the governmental organization" an "employer" or "employment agency" within the meaning of Title VII. *George v. N.J. Bd. Of Veterinary Med. Examiners*, 635 F. Supp. 953, 955 (D.N.J. 1985) (dismissing Title VII claim against state board of veterinary medical examiners that oversaw professional licensing activities); *see also* 42 U.S.C. § 2000e. This is particularly true where the municipal entity's "control is exercised exclusively in its regulatory capacity rather than in the course of a customary employer-employee relationship." *United States v. Bd. Of Educ. For School Dist. of Philadelphia*, 911 F.2d 882, 891-92 (3d Cir. 1990). "Third Circuit precedent suggests that [such] an employment relationship between the plaintiff and the defendant is required for [Title VII] liability." *Milward v. Ligonier Valley Learning Ctr., Inc.*, No. 11-CV-62, 2011 WL 1565531, at * (W.D. Pa. Apr. 25, 2011) (citing *Bd. Of Educ. For School Dist. of Philadelphia*, 911 F.2d at 891-92). Plaintiffs have neither alleged nor submitted evidence to suggest that they were ever employed by Defendants, that they sought employment from defendants, or that Defendants "control the day-to-day operations of [liquor license holders]" to the extent that a traditional employer would. *George*, 635 F. Supp. at 956; *see also* ECF No. 69 at 27-28. Therefore, there exists no genuine issue of material fact over whether the municipal Defendants were employers subject to Title VII liability.

For the reasons set forth above, the Court will grant summary judgment for Defendants on Plaintiffs' claims under 42 U.S.C. §§ 1983, 1985 and 1986, and under Title VII of the Civil Rights Act of 1964 insofar as they are predicated on the denial of Plaintiffs' transfer application.

### c. Plaintiffs Have Failed to Show that Defendants' Processing of Their Transfer Application was Untimely or Otherwise Constitutionally Deficient

Plaintiffs' timeliness argument is best understood as an alleged violation of substantive and procedural due process. Their argument hinges on allegations that municipal employees provided Plaintiffs "disinformation" and made other "attempts to stall the application process." ECF No. 69 at 37-38. However, courts in this District have established that there is "nothing[ ] to support the idea that a Liquor License constitutes a fundamental property interest for purposes of a substantive due process claim." *Harmon v. Borough of Belmar*, No. 17-cv-2437, 2018 WL 11411301, at *7 (D.N.J. Feb. 26, 2018) (quoting *H&R Grenville Fine Dining, Inc. v. Borough of Bay Head*, No. 10-CV-00325, 2011 WL 6339815, at *17 (D.N.J. Dec. 19, 2011)) (finding that "an interest in transferring a liquor license is not protected"). And "[w]hile courts have recognized that a liquor license may constitute a property interest for procedural due process purposes," *Harmon*, 2018 WL 11411301, at *7, "the denial of [an] *application* for a liquor license transfer cannot support a due process claim," *Thomas v. Independence, Tp.*, 463 F.3d 285, 297 (3d Cir. 2006) (emphasis added); *see also Wojcik v. Romulus*, 257 F.3d 600, 610 (6th Cir. 2001) (finding that municipal approval of a license was an "explicit condition[ ] precedent to Plaintiffs' acquiring a constitutionally protected property interest" in the license).

In any event, a procedural due process claim would fail because Plaintiffs "never timely invoked the appeal process available to [them]." *Doheny v. Pennsylvania*, 781 F. App'x 106, 113 (3d Cir. 2019); *see also Elsmere Park Club, LP v. Town of Elsmere*, 542 F.3d 412, 423 (3d Cir. 2008) ("[T]o state a claim for failure to provide due process, a plaintiff must have taken advantage

14

of the processes that are available to him or her. . . . Thus, the [plaintiff's] failure to take advantage of that process means it cannot claim a constitutional injury." (internal quotation marks and citation omitted)); ECF No. 66-2 at 16.  Sergeant Arthur notified Plaintiffs' counsel of their right to appeal the application denial to the State Division of Alcoholic Beverage Control.  *Id.*; ECF No. 66-3, Ex. E at ¶ 20.  As they themselves admit, "Plaintiffs did not go through th[is] administrative appeal process" because of a distrust towards Defendants.  ECF No. 69 at 38; *see also Harmon*, 2018 WL 11411301, at *8 (recognizing New Jersey's "robust regulatory scheme" for "the application and receipt of a liquor license," and that "New Jersey provides a thorough appellate process for parties to challenge municipal decisions").  As such, their procedural due process claim must fail.

Regardless, Plaintiffs have not shown that Defendants processed the transfer application in a constitutionally deficient manner.  Plaintiffs argue that Ms. Butler failed to entertain or progress iterations of their transfer application submitted in September 2020.  *See, e.g.*, ECF No. 69 at 21-22.  However, Plaintiffs fail to proffer sufficient evidence showing that a transfer application was actually provided to Defendant Clifton ABC prior to October 9, 2020.[5]  *See* ECF No. 78-1, Ex. 2 (letter dated October 9, 2020, from Mr. Green to Ms. Butler enclosing Plaintiffs' transfer application).

Any factual dispute over Defendant Clifton ABC's first receipt of Plaintiffs' transfer application is otherwise not material.  The parties do not dispute that the application required continued revision and supplementation from at least October 9, 2020, to October 26, 2020.  *See,*

---

[5] Plaintiffs state numerous times in their papers, occasionally with conflicting allegations, that earlier versions of their transfer application were submitted to Ms. Butler in September 2020.  *See* ECF No. 1 at Section II(D) (claiming Ms. Butler "held up our municipal application process Since 09/11/2020"); *id.* at Section III(B) ("It began in September 28, 2020 first app submission"); ECF No. 69 at 21 (stating application was first delivered on 9/2/2020).  However, these allegations are neither sufficient on summary judgment nor adequately supported by evidence in the record.  *See, e.g.*, ECF Nos. 75-3 (transfer application dated 9/14/2020); 70-2 at 4 (statements made in emails to Ms. Butler from October and November 2020 noting September 2020 application submissions).

*e.g.*, ECF Nos. 70-6 at 2-3 (email dated October 13, 2020, from Ms. Butler to Mr. Green identifying deficiencies with Plaintiffs' application); *id.* at 1 (email dated October 20, 2020, from Ms. Butler to Mr. Green seeking clarification on whether a basement was part of the licensed premises); 1-3 at 15-18 (Plaintiffs acknowledging and agreeing to rectify errors flagged by Ms. Butler by email on October 20, 2020). Further, Defendant Clifton ABC did not receive the consent to transfer form from the entity selling Plaintiffs its liquor license, which was required to complete the transfer application, until October 26, 2020. ECF No. 66-3, Ex. D at ¶ 7. And finally, Plaintiffs did not obtain a clearance certificate from the New Jersey Division of Taxation until November 17, 2020, ECF No. 71-1, even though they were on notice that the certificate was required for the Clifton ABC Board to consider their application, ECF No. 70-2 at 6 (email dated November 13, 2020, from Ms. Butler to Plaintiffs); Pl. SMF ¶ 9.[6] Thus, the December 9, 2020, Clifton ABC Board meeting—where Plaintiffs' application was considered and denied—was the first board meeting in which Plaintiffs' application was eligible for consideration. *See* ECF No. 78-1, Ex. 7.

Also, to the extent Plaintiffs challenge the time that it took Defendant Clifton Police Department to conduct its background investigation, that argument is also without merit. Sergeant Arthur received Plaintiffs' transfer application on or around October 28, 2020. ECF No. 66-3, Ex. E at ¶ 2. On November 4, 2020, he discovered that Plaintiffs provided their fingerprints on October 23, 2020, and that the State's investigative results were made available on October 26, 2020. *Id.* at Ex. 1. On November 13, 2020, Sergeant Arthur was provided with the FBI's investigative results. *Id.* at ¶ 7. Thus, the state and federal investigative results were provided within thirty days of being requested, in accordance with applicable municipal law. *See* City of Clifton Code § 303-

---

[6] Plaintiffs also accused Ms. Butler of lying about the dates of public meetings for liquor licensure approvals, despite Ms. Butler's repeated attempts to provide proof to the contrary. ECF Nos. 70-2 at 4-7; 70-4 at 1-2.

3(a)-(b) (stating that a licensing board "may [conditionally] consider the application" without considering the investigation results if "there is a delay of more than 30 days in receiving the reports" from the state and federal agencies); City of Clifton Code § 137-19(B) (stating same in the liquor license application context). Thereafter, Sergeant Arthur scheduled an interview with Plaintiffs on December 4, 2020. *Id.* at ¶ 16. On the same day, he received supplemental disclosures from the FBI identifying Plaintiff Johnson's 1995 RICO conviction. *Id.* at ¶¶ 10-11. With the results of his investigation, Sergeant Arthur provided the Clifton Police Department's recommendation on December 5, 2020, *id.* at ¶ 21, in advance of the Clifton ABC Board's December 9 meeting. Plaintiffs raise no genuine question of material fact to challenge this timeline.

Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiffs' claims to the extent they are predicated on Defendants' untimely processing of the transfer application.

## IV. CONCLUSION[7]

For the reasons stated above, the Court **GRANTS** Defendants' motion for summary judgment (ECF No. 66) and **DENIES** Plaintiffs' motion for summary judgment (ECF No. 69). An appropriate Order accompanies this Opinion.

Dated: June 29, 2023

s/ Claire C. Cecchi<br>
**CLAIRE C. CECCHI, U.S.D.J.**

---

[7] To the extent that the parties have raised any arguments not expressly addressed herein, the Court has considered and rejected them.

17